**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

CHINH HUYNH,

Plaintiff,

v.

SCHWAN'S SHARED SERVICES, LLC, *as Plan Administrator and Sponsor of the Short-Term Disability Plan*;

SEDGEWICK CLAIMS MANAGEMENT SERVICES, LTD; and

PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Defendants.

Civil No. 25-3988 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

---

Denise Y. Tataryn, **NOLAN THOMPSON LEIGHTON & TATARYN PLC**, 12301 Whitewater Drive, Suite 80, Minnetonka, MN 55343, for Plaintiff.

Elizabeth J. Roff, **FISHER PHILLIPS LLP**, 225 South Sixth Street, Suite 3900, Minneapolis, MN 55402; Geoffrey Forney, **FISHER PHILLIPS LLP**, One Monument Square, Suite 801, Portland, ME 04101, for Defendants Schwan's Shared Services, LLC and Sedgwick Claims Management Services, Ltd.

Alnisa Bell, **SEYFARTH SHAW LLP**, 620 Eighth Avenue, New York, NY 10018; Matthew A. Clabots, **SEYFARTH SHAW LLP**, 223 South Wacker Drive, Suite 8000, Chicago, IL 60606; Barbara P. Berens, **BERENS & MILLER PA**, 80 South Eighth Street, Suite 3720, Minneapolis, MN 55402, for Defendant Prudential Insurance Company of America.

Plaintiff Chinh Huynh initiated this action against Defendants Schwan's Shared Services, LLC ("Schwan's"), Sedgwick Claims Management Services, Ltd ("Sedgwick"), and Prudential Insurance Company of America ("Prudential") under the Employee Retirement Income and Security Act of 1974 ("ERISA") after being denied short-term disability and long-term disability benefits under his employer-sponsored welfare benefit plans. Defendants Schwan's and Sedgwick (collectively, "Defendants") now move to dismiss the claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants' motion to dismiss does not address Count Three because that claim relates to Plaintiff's claims against Prudential and stems from Prudential's denial of long-term disability benefits. After careful consideration of the pleadings and the parties' arguments, the Court will **DENY** Defendants' motion to dismiss.

## BACKGROUND

## I. FACTUAL BACKGROUND

### A. Plaintiff's Employment and Medical History

Schwan's employed Huynh as the Director of Enterprise Architecture from June 3, 2019, through the morning of October 12, 2022. (Compl. ¶¶ 32, 41, Oct. 16, 2025, Docket No. 1.) Before commencing employment with Schwan's, Huynh was involved in a motor vehicle accident in June 2018. (*Id.* ¶ 34.) He was then involved in another motor vehicle accident in July 2020. (*Id.*) After Huynh's accident in July 2020, he was diagnosed with Persistent Postural-Perceptual Dizziness (PPPD), "post-trauma vision changes, convergence insufficiency, headaches, and changes in mood and increased anxiety." (*Id.*

¶ 35.) As a result of Huynh's conditions, he worked with restrictions and needed accommodations from September 2020 until he was terminated on October 12, 2022. (*Id.* ¶¶ 36–37.)

In the months leading up Huynh's termination, several medical professionals documented Huynh's reports of various cognitive and physical symptoms, including dizziness and headaches. (*Id*. ¶¶ 42–46.) On September 29, 2022, a neuropsychologist at Mayo Clinic recommended that Huynh take a leave of absence for up to six months. (*Id*. ¶ 47.) On the morning of October 12, 2022—before Huynh submitted a leave request—Schwan's terminated Huynh for "unsatisfactory performance over a prolonged period of time." (*Id*. ¶¶ 41, 50.)

**B. Short-Term Disability**

While Huynh was employed by Schwan's, Schwan's sponsored a short-term disability plan (the "STD Plan") and served as the plan administrator. (*Id.* ¶¶ 5, 7.)[1] Schwan's STD plan is self-insured. (*Id.* ¶ 7.) Sedgwick served as the claims administrator for the STD Plan. (*Id*. ¶ 6.)

[1] Huynh also asserts claims against Prudential—who underwrote and insured a long-term disability plan. (Compl. ¶¶ 10, 164–70.) Because Huynh's claims against Prudential do not concern the Schwan's and Sedgwick's motion to dismiss, the Court will not detail the terms of long-term disability plan.

Because the STD Plan incorporates by reference an agreement outlining general eligibility provisions (the "Wrap Document"), the Court will first detail the terms of the STD Plan before addressing the relevant terms of the Wrap Document.

**1. STD Plan Document**

During his employment with Schwan's, Huynh was covered under Schwan's STD Plan. (*Id.* ¶ 13.) Huynh also purchased a "buy-up benefit" for the STD plan. (*Id.*) The STD Plan's buy-up benefit expanded Huynh's coverage to 70 percent of his weekly covered earnings, with a maximum benefit of $2,000. (*Id.* ¶ 15.) The maximum benefit duration per disability is 180 days from the date of disability. (*Id.* ¶ 16.)

Under the STD Plan, an employee is eligible to participate if he or she in "Active Employment."[2] (Decl. of Denise Y. Tataryn ("Tataryn Decl.") ¶ 2, Ex. 2 ("STD Plan Document") at 4, Jan. 2, 2026, Docket No. 34.) The STD Plan also details the circumstances in which coverage will end. (STD Plan Document at 5.) In relevant part, coverage will end

[2] "Active employment" is defined as:

> working for Schwan's fully performing Your customary duties for Your regularly scheduled number of hours at Your normal work location or other location as may be required or directed by Schwan's including at other places Schwan's business requires You to travel such as an alternative work site which may include Your home. If You are not working due to Illness or Injury, You do not meet the Active Employment requirement. If You are receiving sick pay, short-term disability benefits or long-term disability benefits, You do not meet the Active Employment requirement. Subject to the above, paid time off is considered Active Employment.

(STD Plan Document at 9; *see also* Compl ¶ 18.)

at the earliest of: "the date You cease to be in an eligible employment classification" or "the date Your employment terminates except as provided under the Continuation of Coverage provision[.]" (*Id.*; *see also* Compl. ¶ 17.)

Under the "Continuation of Coverage" provision, "if Your Active Employment ends due to layoff, termination of employment, or any other termination of the employment relationship, coverage under the Plan will terminate and Continuation of Plan Coverage under this provision will not apply." (STD Plan Document at 5; *see also* Compl. ¶ 17.)

Under the STD Plan, a claimant is disabled under the plan "if solely because of a covered Illness (physical or mental), [or] Injury, . . . You are unable to perform the material duties of Your Own Occupation and earn less than 80% of Your Covered Earnings." (STD Plan Document at 10; *see also* Compl. ¶ 19.)

Finally, the STD Plan states that Schwan's, as the plan administrator, has the sole discretionary authority for all "determinations, interpretations, rules and decisions." (STD Plan Document at 14; *see also* Compl. ¶ 20.) The STD Plan further states that Schwan's "has delegated the authority to determine claims to the Claims Administrator, except for determinations of eligibility to participate in the Plan." (STD Plan Document at 14; *see also* Compl. ¶ 20.)

### 2. Wrap Document

The STD Plan Document incorporates by reference the "General Eligibility Provisions for the Component Benefit Programs of the Employee Benefit Plan for

Employees of the Subsidiaries of Schwan's Company" (the "Wrap Document"). (STD Plan Document at 2.) Like the STD Plan Document, the Wrap Document designates Schwan's as the Plan Administrator. (Decl. of Elizabeth J. Roff ("Roff Decl.") ¶ 2, Ex. 2 ("Wrap Document") at 3, Dec. 12, 2025, Docket No. 28.) As the Plan Administrator, Schwan's reserved itself "full discretionary authority to make any and all factual determinations necessary to determine eligibility for benefits or the amount of any benefits and full discretionary authority to construe the terms of the Plan." (Wrap Document at 21.) The discretion Schwan's reserved to itself includes "the authority to adopt any rules, regulations, forms, or computations that [Schwan's] deems necessary to administer the Plan." (*Id.*) Like the STD Plan Document, Schwan's "delegated the authority to decide claims to the Claims Administrator, except for determinations of eligibility to participate in the Plan." (*Id.*)

### C. Plaintiff's Claim for Short-Term Disability Benefits

Schwan's terminated Huynh on the morning of October 12, 2022. (Compl. ¶ 41.) On October 14, 2022, Huynh filed a claim for benefits under the STD Plan, which identified his disability date as October 12, 2022. (*Id.* ¶ 51.)

On October 18, 2022, Schwan's emailed Sedgwick, stating that Huynh was not eligible for short-term disability ("STD") benefits since he was terminated on October 12, 2022. (Compl. ¶ 53; *see also* Roff Decl. ¶ 2, Ex. 3.) However, Huynh contends that a Sedgwick representative initially believed he was eligible as the first date he claimed

disability was the same day he was terminated. (Compl. ¶ 54.) On October 19, 2022, Sedgwick issued its initial denial letter to Huynh. (*Id.* ¶ 52; *see also* Roff Decl. ¶ 2, Ex. 4.) The letter stated the Huynh became an "ineligible class of employee" on his "first day of absence." (Roff Decl. ¶ 2, Ex. 4) Sedgwick stated that the determination was based on the "General Eligibility Provisions" set forth in the Wrap Document. (*Id.*)

On April 3, 2023, Huynh appealed the denial of STD benefits, with a letter from his attorney stating that he qualified under the definition of disability before his first day of absence, along with opinions from several medical providers and medical records from six practitioners. (Compl. ¶ 57.)

Sedgwick upheld the denial on April 26, 2023, reiterating that Huynh became ineligible on his first day of absence. (*Id*. ¶ 63.) Like Sedgwick's initial denial letter, the appeal denial letter stated Huynh was not eligible based on the "General Eligibility Provisions" set forth in the Wrap Document. (*Id.* ¶ 64; *see also* Roff Decl. ¶ 2, Ex. 6 at 1.) The appeal denial letter further stated that Huynh could file a "second appeal." (Roff Decl. ¶ 2, Ex. 6 at 1; *see also* Compl. ¶ 64.)

On October 23, 2023, Huynh filed a second appeal. (Compl. ¶ 67.) Two days later, Huynh's counsel requested a copy of the third-party administrative services agreement (the "TPA Agreement") between Sedgwick and Schwan's. (*Id.* ¶ 68.) Huynh claims that on November 16, 2023, Schwan's counsel responded to the request but refused to provide a copy of the TPA Agreement. (*Id.* ¶ 72.) Huynh states that on March 15, 2024,

outside counsel for Schwan's sent an incomplete copy of the Wrap Document. (*Id*. ¶ 78.) Huynh states that this incomplete document did not include information concerning the disability benefit plan. (*Id*.) That same day, Schwan's outside counsel provided a letter to Huynh's counsel that asserted that Huynh had no right to file a second-level appeal under the STD Plan's procedures and that, as a result, Sedgwick's denial of STD benefits was final. (*Id*. ¶¶ 78–79; Roff Decl. ¶ 2, Ex. 7.)

## II. PROCEDURAL BACKGROUND

On October 16, 2025, Plaintiff Huynh brought this action against Schwan's, Sedgwick, and Prudential, alleging that they failed to comply with ERISA when they denied Huynh short-term and long-term disability benefits. (Compl., Oct. 16, 2025, Docket No. 1.) Huynh alleges four counts.

In Count One, Huynh seeks judgment against Sedgwick and Schwan's for benefits under his STD Plan, alleging that (1) Sedgwick abused its discretion in denying Huynh's STD claim; (2) Sedgwick "failed to conduct a full and fair review and comply with ERISA regulations"; and (3) Schwan's abused its discretion "by failing to address Huynh's second level appeal and failing to comply with ERISA regulations." (*Id.* ¶¶ 152–158.) In Count Two, Huynh alleges that Schwan's violated ERISA by failing to provide (1) the TPA Agreement between Schwan's and Sedgwick and (2) the complete Wrap Document. (*Id.* ¶¶ 159–163.) In Count Three, Huynh alleges that Prudential's denial of his long-term disability benefit violates ERISA and seeks judgment against Prudential for benefits due

under the long-term disability policy. (*Id.* ¶¶ 164–170.) In Count Four, Huynh asserts that he is entitled to equitable relief because Schwan's and Sedgwick allegedly breached their fiduciary duties. (*Id.* ¶¶ 171–81.)

Prudential answered the Complaint. (Docket No. 15.) But Schwan's and Sedgwick now move to dismiss Counts One, Two, and Four under the Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. (Defs.' Mot. to Dismiss, Dec. 12, 2025, Docket No. 24.)

## DISCUSSION

## I. STANDARD OF REVIEW

### A. Rule 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the Complaint as true to determine if the Complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Instead, "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014).

**B. ERISA**

A participant in an ERISA plan may initiate an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Court generally reviews the denial of ERISA benefits de novo. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). But an abuse of discretion standard applies if "the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 986–87 (8th Cir. 2014) (quoting *Bruch*, 489 U.S. at 115). Under an abuse of discretion standard, the plan administrator's decision must be upheld "so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trs.*, 64 F.4th 951, 959 (8th Cir. 2023) (citation omitted).

Because the STD Plan Document and the Wrap Document contain discretionary clauses, the Court reviews the denial of Plaintiff's claim for STD benefits for abuse of discretion. The parties agree that an abuse of discretion standard applies.

## II. ANALYSIS

Defendants move to dismiss Counts One, Two, and Four. The Court will address each count in turn.

### A. Count One – STD Benefits Due

Huynh alleges in Count One that he submitted sufficient proof to support his disability claim, that he was covered under the STD Plan, that Sedgwick abused its discretion in denying Huynh's STD claim, that Sedgwick failed to conduct a full and fair review of the claim, and that Schwan's abused its discretion by refusing to address Huynh's second-level appeal. (Compl. ¶¶ 152–58.)

Schwan's and Sedgwick move to dismiss Count One because (1) Huynh was ineligible for benefits under the STD Plan; (2) Schwan's eligibility determination was reasonable; and (3) Sedgwick is not a proper defendant under Count One since Sedgwick is not responsible for funding STD benefits. The Court will address each argument in turn.

#### 1. Eligibility for STD Benefits

The STD Plan Document's "Coverage Termination" provision outlines circumstances in which coverage terminates. In relevant part, the provision provides that STD coverage will end at the earliest of: "the date You cease to be in an eligible employment classification" or "the date Your employment terminates except as provided under the Continuation of Coverage provision." (STD Plan Document at 5; *see also* Compl. ¶ 17.) The "Continuation of Coverage" provision provides, in relevant part, that "if Your Active Employment ends due to layoff, termination of employment, or any other

termination of the employment relationship, coverage under the Plan will terminate and Continuation of Plan Coverage under this provision will not apply." (STD Plan Document at 5; *see also* Compl. ¶ 17.)

Here, the parties do not dispute that Huynh was terminated on October 12, 2022, nor do they dispute that he identified October 12, 2022, as his date of disability. (*See* Compl. ¶¶ 41, 51.) The parties also do not dispute that Huynh was terminated due to unsatisfactory performance. (*Id.* ¶ 50.) Based on these undisputed facts, it appears that the STD Plan's "Coverage Termination" provision precludes coverage because Huynh's coverage ended on the day he was terminated. Nor was Huynh entitled to continued coverage because he was terminated for cause.[3]

The Court's inquiry, however, does not end there. Sedgwick did not rely on the "Coverage Termination" provision in its final denial later—the decision on which the Court must focus its analysis. *See Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) ("Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision . . . and not the initial, often succinct denial letters, in order to ensure the development of a complete record." (internal quotation marks omitted)). When a plan administrator denies benefits, ERISA obligates the plan administrator to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been

[3] The Court's initial assessment of the Huynh's eligibility for STD benefits shall not be construed as a final determination of eligibility. Any statements made by the Court at this stage are preliminary in nature and do not constitute a final ruling on Huynh's eligibility for benefits.

> denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The Department of Labor regulations likewise make it clear that when a benefit claim is denied, the plan administrator must, among other things, explain in writing "[t]he specific reason or reasons for the adverse determination" and must "[r]eference to the specific plan provisions on which the determination is based[.]" 29 C.F.R. § 2560.503-1(g)(1)(i), (ii).

Here, the appeal denial letter that was issued on April 26, 2023—and the initial denial letter, for that matter—stated that Huynh was denied STD benefits based on the following provision:

> *See the General Eligibility Provision for the Component Benefit Programs of the Employee Benefit Plan for Employees of the Subsidiaries of Schwan's Company, which are incorporated herein by this reference (the "General Eligibility Provisions"). The General Eligibility Provisions are available at www.schwansbenefits.hrintouch.com.*

(Roff Decl. ¶ 2, Ex. 6 at 1.) But now, Defendants are relying on the "Coverage Termination" provision contained in the STD Plan Document. Therefore, a court could construe Defendants' new basis for denying benefits as an impermissible post-hoc rationale. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) (Courts must "not permit ERISA claimants denied the timely and specific explanation to which the

law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 1006 n.4 (8th Cir. 2005) (noting that "if a plan administrator attempts to gain a tactical advantage by proffering a new plan interpretation for the first time in litigation, then [the court is] free to ignore it" (internal quotation marks omitted)).

Although the "Coverage Termination" provision appears to bar STD coverage, Defendants arguably abused their discretion by denying benefits based on the General Eligibility Provisions contained in the Wrap Document. Had Defendants relied on the "Coverage Termination" provision in the final denial letter, STD coverage could very well be foreclosed. Instead, Defendants now advance a different rationale for denying coverage—a practice that the Eighth Circuit has cautioned courts to guard against. Accordingly, the Court will decline to dismiss Count 1 at the pleading stage.

**2. Reasonableness of Eligibility Determination**

Defendants argue that Schwan's eligibility determination was reasonable as a matter of law. To determine whether a plan administrator's interpretation is reasonable, courts in the Eighth Circuit apply the factors from *Finley v. Special Agents Mutual Benefit Association*, 957 F.2d 617 (8th Cir. 1992). Under *Finley,* to determine whether a denial of benefits was reasonable, the Court considers (1) whether the "interpretation is consistent with the goals of the Plan," (2) "whether their interpretation renders any language in the Plan meaningless or internally inconsistent," (3) "whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute," (4) "whether they

have interpreted the words at issue consistently," and (5) "whether their interpretation is contrary to the clear language of the Plan." *Id.* at 621. When an administrator has offered a reasonable interpretation, courts may not insert their own interpretation because, under an abuse of discretion review, courts are not tasked with determining the "best or preferable interpretation." *Kutten v. Sun Life Assurance Co. of Can.*, 759 F.3d 942, 945 (8th Cir. 2014). In addition to the *Finley* factors, the presence of a conflict of interest is a factor the Court must consider in cases where the employer "both funds the plan and evaluates the claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008); *see also Ruessler*, 64 F.4th at 958 (affirming that the conflict of interest is a factor to be weighed in the abuse of discretion analysis).

Because it is unclear who the relevant decisionmaker was or on what basis the STD benefits were denied, the Court concludes that conducting a *Finley* analysis would be premature and is better reserved for review after discovery.

### 3. Sedgwick as a Proper Defendant

Defendants argue that Sedgwick is not a proper defendant under 29 U.S.C. § 1132(a)(1)(B) as set out in Count One because Sedgwick is not financially responsible for funding STD benefits. Defendants contend that Schwan's, as the plan administrator, reserved discretionary authority with respect to Huynh's eligibility for itself. As such, they argue that Sedgwick is not a proper party to the claim. Huynh counters that discretionary authority was delegated to Sedgwick, and therefore, Sedgwick is a proper defendant.

Only the party that controls the administration of an ERISA plan is a proper defendant in an action concerning benefits. *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998) "Where a defendant is [in] no position to pay out benefits to the plaintiff, the defendant is not the proper party to be sued." *Harris v. SWAN, Inc.*, 459 F. Supp. 2d 857, 862 (E.D. Mo. 2005) (citing *Hall v. LHACO, Inc.*, 140 F.3d 1190, 1995 (8th Cir. 1998)).

Here, the record shows that Schwan's STD plan is self-funded. (STD Plan Document at 15; Compl. ¶ 7.) The record also shows that both the STD Plan Document and the Wrap Document contain discretionary clauses. (*See* STD Plan Document at 14; Wrap Document at 21.) It is also undisputed that both documents state that Schwan's "has delegated the authority to determine claims to the Claim Administrator, except for determinations of eligibility to participate in the Plan." (STD Plan Document at 14; *see also* Wrap Document at 21 ("The Plan Administrator has delegated the authority to decide claims to the Claims Administrator, except for determinations of eligibility to participate in the Plan.").)

The Court concludes that, at this early stage of the litigation, it would be premature to dismiss Sedgwick from Count 1. Based on the plain language of the STD Plan Document and the Wrap Document, it is unclear which party controls the administration of the plan with respect to Huynh's claim. If the phrase "eligibility to participate in the Plan" is construed to encompass determinations concerning the applicability of the Coverage Termination provision, then Schwan's likely retained authority over the administration of Huynh's claim. On the other hand, if that phrase is construed more narrowly and does

not include such determinations, then Schwan's likely delegated the relevant decision-making authority to Sedgwick. Accordingly, the plain language of the plan documents does not definitively establish which entity controlled the administration of the plan.

The factual record is equally unclear. The Complaint alleges that Sedgwick issued the denial letters and served as the primary point of communication with Plaintiff regarding his claim. (*See, e.g.*, Compl. ¶ 52.) At the same time, the Complaint also alleges that, in October 2022, Schwan's informed Sedgwick through email that Huynh was ineligible for STD benefits. (*Id.* ¶ 53.) These allegations suggest that either entity controlled the administration of the STD plan. At a minimum, the Complaint's allegations raise a factual dispute regarding which entity possessed the requisite control. Given both the ambiguity in the plan documents and the undeveloped factual record, the Court finds that dismissal of Sedgwick at this early stage of the litigation would be premature.

* * *

Accordingly, the Court will **DENY** Defendants' Motion to Dismiss as to Count One.

### B. Count Two – Failure to Provide Plan Documents

Huynh alleges in Count Two that Schwan's violated ERISA by failing to provide him with (1) the TPA Agreement between Schwan's and Sedgwick and (2) the complete Wrap Document. (*Id.* ¶¶ 159–163.)

Section 502(a)(1)(A) of ERISA allows plan participants and beneficiaries to bring a cause of action against a plan administrator if the administrator "refus[es] to supply requested information" where ERISA requires the administrator to disclose such

information. 29 U.S.C. § 1132(a)(1)(A), (c). The purpose of the disclosure provision is to ensure that "the individual participant knows exactly where he stands with respect to the plan." *Bruch,* 489 U.S. at 118 (citation omitted). "This [disclosure requirement] suggests that, all other things being equal, courts should favor disclosure where it would help participants understand their rights." *Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1070 (6th Cir. 1994).

Section 104(b)(4) of ERISA requires a plan administrator to provide upon request copies of all instruments under which the plan is established or operated. 29 U.S.C. § 1024(b)(4). It states: "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, **contract, or other instruments under which the plan is established or operated**." 29 U.S.C. § 1024(b)(4) (emphasis added). The Eighth Circuit has construed the phrase "other instruments" narrowly:

> The statute does not define the term "other instruments under which the plan is established or operated." . . . In common legal parlance, that means instruments which govern the plan, rather than those which simply evidence its operation. . . . [W]e agree with the circuits that have construed "other instruments" as meaning, not any document relating to a plan, but only formal documents that establish or govern the plan.

*Brown v. Am. Life Holdings, Inc.,* 190 F.3d 856, 861 (8th Cir. 1999). If a plan administrator fails to supply documents under 29 U.S.C. § 1024(b)(4) within 30 days after receipt of the

document request, "plan administrators are subject to penalties of up to $110 per day for noncompliance." *Sepulveda-Rodriquz v. MetLife Grp., Inc.*, 936 F.3d 723, 732 (8th Cir. 2019) (citing 29 U.S.C. § 1132(c); 29 C.F.R. § 2575.502c-3).

Taken together, the Court must determine whether the TPA Agreement and the complete Wrap Document are "contract[s], or other instruments under which the plan is established or operated." *See* 29 U.S.C. § 1024(b)(4). The Court will address each document in turn.

**1. TPA Agreement**

Although the Eighth Circuit has not considered whether a third-party administrative agreement constitutes "a contract" or "other instrument[] under which the plan is established or operated" under 29 U.S.C. § 1024(b)(4), the Tenth Circuit recently held that an administrative services agreement—which governs the relationship between the plan administrator and the claims administrator—falls within the scope of § 1024(b)(4). *See M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1267 (10th Cir. 2024).

In *M.S.*, the Tenth Circuit concluded that the administrative services agreement at issue was a "contract" and that such contract was "under which the plan is established or operated." *Id.* In reaching its conclusion, the Tenth Circuit noted that the "[d]isclosure of the [administrative services agreement] sets out the relationship between [the plan administrator and the claims administrator], thus better informing beneficiaries of their rights under the Plan and placing them in a position to make informed decisions." *Id.* at 1269. The Tenth Circuit's decision is also consistent with a Seventh Circuit decision, where

the court concluded that administrative services agreements may qualify as both contracts and instruments under which a plan is operated or established under § 1024(b)(4). *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 796 (7th Cir. 2009).

Although these decisions arise outside of the Eighth Circuit, the Court finds those courts' conclusions and rationales to be persuasive. Accordingly, the Court concludes that Plaintiff has adequately alleged that the TPA Agreement is a contract or instrument under which the plan is operated or established under § 1024(b)(4). Moreover, because the TPA Agreement has not been produced or attached to any of the parties' filings, dismissal at this early stage would be premature.

**2. Complete Wrap Document**

Huynh alleges that he did not receive the complete Wrap Document in violation of 29 U.S.C. § 1132(c). (Compl. ¶¶ 78, 162.) Schwan's essentially concedes that they did not send Huynh the complete Wrap Document by acknowledging that it sent "the **relevant portion** of the Wrap Document" only. (Defs.' Mem. in Supp. of Mot. to Dismiss at 13, Dec. 12, 2025, Docket No. 26 (emphasis added).) Schwan's cites no authority for the proposition that it may selectively produce only those portions of documents it wishes to disclose. The Court therefore concludes that dismissal at this early stage in the litigation would be premature.

* * *

Accordingly, the Court will **DENY** Defendants' motion to dismiss as to Count Two.

## C. Count Four – Breach of Fiduciary Duties

In Count Four, Huynh seeks equitable relief under 29 U.S.C. § 1132(a)(3) in the form of a surcharge against Schwan's and Sedgwick, alleging that they breached their fiduciary duties.[4] (Compl. ¶¶ 171–81.) Specifically, Huynh alleges that Schwan's breached its fiduciary duty of loyalty by interfering with Huynh's STD claim and by mispresenting his medical condition to Sedgwick. Huynh further alleges that Sedgwick breached its fiduciary duty of loyalty by acting in Schwan's interest and by improperly denying Huynh's claim for STD benefits.

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege three elements: (1) the defendant is a plan fiduciary, (2) the defendant breached its fiduciary duties, and (3) that the breach caused harm to the plaintiff. *Lanpher v. Metro. Life Ins. Co.*, 50 F. Supp. 3d 1122, 1148 (D. Minn. 2014).

Schwan's and Sedgwick argue that Count Four must be dismissed because (1) Sedgwick did not act in a fiduciary role; (2) Huynh fails to plausibly allege that Schwan's actions amount to a breach of fiduciary duty; and (3) Huynh's equitable relief claim is

---

[4] Under 29 U.S.C. § 1132(a)(3), a civil action may be initiated:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

impermissibly duplicative of his benefits due claim. The Court will address each argument in turn.

### 1. Sedgwick's Alleged Fiduciary Capacity

Defendants argue that Count Four must be dismissed as to Sedgwick because Sedgwick owed no fiduciary duty to Huynh and acted in a purely administrative capacity.

As defined in ERISA, a "fiduciary" is a particular kind of "person." 29 U.S.C. § 1002(21)(A). A "person" is "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). So defined, a "person" may also be a fiduciary under certain circumstances:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A). Department of Labor guidance makes it clear that entities that perform mere ministerial functions—such as claims processing—do not act in a fiduciary capacity under ERISA. 29 C.F.R. § 2509.75-8.[5]

---

[5] Department of Labor guidance provides, in relevant part:

After careful review of the parties' arguments, the Court concludes that Huynh has plausibly alleged that Sedgwick acted in a fiduciary capacity. As discussed in Discussion Section II.A.3, it is unclear, at least at this stage, whether Schwan's or Sedgwick possessed the discretionary authority to decide Huynh's STD claim. If discovery reveals that Sedgwick acted in a purely ministerial role, the Court will be inclined to grant summary judgment to Sedgwick on Plaintiff's fiduciary duty claim on the basis that Sedgwick was not a fiduciary under ERISA. But because the Complaint plausibly alleges that Sedgwick acted as a fiduciary, dismissal at this early stage would be premature.

### 2. Breach of Fiduciary Duty

Huynh alleges that Schwan's breached its fiduciary duty of loyalty by interfering with Huynh's STD claim and by mispresenting his medical condition to Sedgwick. Huynh

---

> Only persons who perform one or more of the functions described in [29 U.S.C. § 1002(21)(A)] with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above [e.g., claims processing] for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75-8.

alleges that Sedgwick breached its fiduciary duty of loyalty by acting in Schwan's interest and by improperly denying Huynh's claim for STD benefits.

The duty of loyalty requires that the fiduciary discharge its duties "solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1). Loyalty claims are governed by a two-step framework: first, the reviewing court evaluates the parties' interests to determine if they conflict; if so, the court closely scrutinizes the defendant's actions to determine the defendant's mindset. *Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 596–97 (8th Cir. 2022). Thus, the duty of loyalty "is a subjective standard; what matters is *why* the defendant acted as [it] did." *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 875 (D. Minn. 2018). Unsurprisingly, a fiduciary's motivation is generally a question of fact. *Rozo*, 48 F.4th at 597.

Consistent with the subjective inquiry, courts must distinguish permissible from impermissible motivations. To be sure, "ERISA permits a fiduciary to operate in multiple roles and wear many hats." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 312 F. Supp. 2d 1165, 1175 (D. Minn.2004) (internal quotation marks omitted). And "incidental benefits" are "not impermissible." *Rozo*, 48 F.4th at 595 (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445 (1999)). But "[w]hen making fiduciary decisions . . . a fiduciary may wear only his fiduciary hat." *In re Xcel Energy*, 312 F. Supp. 2d at 1175. That hat requires the fiduciary to act "solely in the interest of the participants" and "for the exclusive purpose of" providing benefits to the participants. 29 U.S.C. § 1104(a)(1).

Incidental benefits must truly be incidental. *See Rozo*, 48 F.4th at 595 (warning that decisions benefitting the fiduciary must still "be made with an eye single to the interests of the participants" (citation omitted)).

Here, the Court concludes that the Complaint, read as a whole, plausibly alleges that Defendants breached their fiduciary duties of loyalty. *See Braden*, 588 F.3d at 594 (noting that a "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."). The Complaint plausibly alleges that Schwan's influenced Sedgwick's decision-making through written communications—assuming Schwan's had delegated authority to decide Huynh's STD claim to Sedgwick. Discovery will likely clarify which entity possessed final decision-making authority to decide Huynh's claim.

The Complaint also plausibly alleges that Defendants failed to produce requested plan documents and that Sedgwick refused to provide the specific STD plan provision underlying its decisions. Further, Sedgwick's denial letter advised Huynh that he had a right to a second-level appeal, but after significant delay, he learned that a second-level appeal was unavailable. Defendants also failed to provide the specific plan provisions on which STD benefits were denied, despite repeated requests.

Taken together, these allegations, as well as those set forth in the rest of the Complaint plausibly state a claim for breach of fiduciary duty on the part of Schwan's and

Sedgwick. The precise contours of the breach of fiduciary duty claim will likely be determined through discovery.

**3. Duplicative Claim**

In Count Four, Huynh seeks equitable relief under 29 U.S.C § 1132(a)(3) in the form of a "surcharge for the harm caused by Schwan's and Sedgwick's breaches of fiduciary duty, including the payment of benefits that were denied due to their breaches and attorneys' fees." (Compl. ¶¶ 180–81.) Schwan's argues that the breach of fiduciary duties claim (Count Four) must be dismissed because it is duplicative of the claim set forth in Count One. In response, Huynh argues that the claims are not duplicative but merely alternate theories of recovery. He argues he can plead both theories provided that he does not receive duplicate relief.

29 U.S.C. § 1132(a)(3) permits a plan participant or beneficiary to bring an action "to obtain other appropriate equitable relief (i) to redress such violations [of this subchapter or the terms of the plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court has identified surcharge, reformation, and estoppel as equitable remedies that may be available under § 1132(a)(3) for breaches of fiduciary duty. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 720 (8th Cir. 2014) (citing *CIGNA Corp v. Amara*, 563 U.S. 421, 440–42 (2011)).

It is true that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'" under ERISA. *Varity Corp v. Howe*, 516

U.S. 489, 515 (1996). The Eighth Circuit has interpreted this language in *Varity* to mean that, although a plaintiff may not ultimately **recover** under both § 1132(a)(1)(B) and § 1132(a)(3), the plaintiff may **plead** both theories of relief in the alternative. *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 546 (8th Cir. 2017); *Silva*, 762 F.3d at 726 (concluding that *Varity* "prohibit[s] duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3)"); *see also* Fed. R. Civ. P. 8(d)(2) (providing that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones").

Indeed, the Eighth Circuit in *Silva* cautioned courts against prematurely dismissing claims brought under § 1132(a)(3) as duplicative: "At the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief." *Silva*, 762 F.3d at 727. That said, claims under § 1132(a)(1)(B) and § 1132(a)(3) must be predicated on separate theories of liability to withstand a motion to dismiss. *Jones*, 856 F.3d at 547.

In light of the Supreme Court's decision in *Amara* and the Eighth Circuit's decisions in *Jones* and *Silva*, the Court rejects Defendants' argument that Plaintiff's request for equitable relief is impermissibly duplicative. Plaintiff's claims—though related—arise under distinct legal theories and are therefore not impermissibly duplicative. The Court

may resolve any issues regarding duplicative recovery at summary judgment. *See Silva*, 762 F.3d at 727 (acknowledging that, "[a]t summary judgment, a court is better equipped to assess the likelihood for duplicate recovery, analyze the overlap between claims, and determine whether one claim alone will provide the plaintiff with 'adequate relief'"). The Court therefore declines to dismiss Count 4 as duplicative.

* * *

Accordingly, the Court will **DENY** Defendants Schwan's and Sedgwick's Motion to Dismiss as to Count Four.

**CONCLUSION**

Defendants Schwan's and Sedgwick move to dismiss Counts One, Two, and Four of the Complaint under Federal Rules of Civil Procedure 12(b)(6). The Court will deny Defendants' motion to dismiss in its entirety. The Court will deny Defendants' motion as to Count One—which concerns the alleged improper denial of STD benefits—because the Complaint plausibly alleges that Defendants improperly rely on terms set forth in the STD Plan Document that were not relied on in the final denial-of-benefits letter. The Court will deny Defendants' motion as to Count Two—which alleges that Schwan's failed to provide the TPA Agreement and complete Wrap Document as required under ERISA—because Huynh plausibly alleges that Schwan's was obligated to furnish those documents but failed to do so. The Court will deny Defendants' motion as to Count Four because Huynh plausibly alleges that Schwan's and Sedgwick acted as fiduciaries and that they

breached their fiduciary duties. Furthermore, dismissing Count Four as duplicative of the benefits due claim (Count One) would be premature at this early stage in the litigation.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Schwan's Shared Services, LLC and Sedgwick Claims Management Services, Ltd.'s Motion to Dismiss (Docket No. [24]) is **DENIED**.

DATED: August 14, 2026
at Minneapolis, Minnesota.

_____/s/ John R. Tunheim_____
JOHN R. TUNHEIM
United States District Judge